ALLEN, P.
Before our statute, Code, ch. 119, § 1, p. 510, the law was well settled that the vendor of real estate, who had parted with the legal title, had a lien on the property for the purchase money, whilst it remained in the hands of the vendee, or volunteers claiming under him, or purchasers with notice. This right of the vendor to resort to the estate, constituted an implied equitable lien, the creature of a court of equit3r founded on the supposed intent of the parties, from which an implied contract was inferred. But the rule was not unbending. The circumstances might show there was no such intent, and therefore no such implied contract could be raised. But what circumstances should have such effect, created the difficulty in the practical enforcement of the rule. A receipt for the purchase money endorsed on the conveyance, or taking a bond, note, bill of exchange or check or other instrument involving the mere personal *829 liability, *of the vendee, did not discharge the lien. But where other security was taken, it was considered that as the party had carved out his own security, it was a substitution for the lien implied by law. The question, however, to what extent the taking a distinct security shall be regarded as a waiver, has been much controverted. So much so, that Lord Eldon seemed to consider that it could not be known in any case, without the judgment of a court, whether, under the circumstances of each case, the taking such security amounted to declaration, plain or manifest intention of a purpose to rely not any longer upon the estate, but upon the personal credit of the individual. Owing to this uncertainty, and to the perplexing litigation growing out of the claim of the vendor to enforce this equitable claim for purchase money against purchasers of the legal title for value, the revisors recommended that the vendor’s equitable lien be abolished: and the Code, ch. 119, § 1, p. 510, provides, that if any person hereafter convey any real estate, and the purchase money or any part thereof remain unpaid at the time of such conveyance, he shall not thereby have a lien for such unpaid purchase money, unless such lien is expressly reserved on the face of the conveyance. The statute abolishes the lien where the vendor has conveyed the legal title, and has not reserved it on the face of the deed. It does not apply to the case where the title has been retained by the vendor, for the obvious reason that in such case the principles of our statutes requiring mortgages or deeds of trust to be recorded, was not infringed upon, and because purchasers for value of the legal title would not be endangered by parol proof of notice. Holding back the deed, or what is the same thing, depositing it as an escrow, until payment of the purchase money was made, was from the first regarded as evidence of an intention to resort to the land if necessary. And it was from decisions *of cases of this character that the doctrine as subsequently developed took its origin. The first case in which the principle was distinctly enounced, was the case of Chapman v. Tanner, 1 Vern. R. 267; where the chancellor said, “that there is a natural equity that the land should stand charged with so much of the purchase money as was not paid; and that without any special agreement for that purpose.” Lord Eldon, in Mackreth v. Symmons, 15 Ves. R. 330, 343, says this case was imperfectly reported; and in Fawell v. Heelis, Amb. R. 724, Lord Apsley said, “that it appeared by the register’s book, that the vendor retained the title deeds till he was paid. And the court said that a natural equity arose from his having the title deeds in his custody.” And in the same case it is said that Pollexfen v. Moore, 3 Atk. 272, is very inaccurately reported, “as by reason that the purchase money was not paid, he kept the title deeds.”
Among the circumstances to repel the | presumption of an intention to resort to the estate, is the making of a conveyance of the legal title: a circumstance always sufficient to repel the presumption as against | a bona fide purchaser from the vendee having the legal title. But a purchaser or in-cumbrancer of a mere equitable title must take the place of the person from whom he purchases. The vendor may resort to the estate whether a purchaser of j;he mere equitable estate from his vendee, purchased with or without notice. Por want of notice, or the payment of a. valuable consideration, cannot place him in a more advantageous position than his vendor. As between the vendor and vendee, the latter occupies the position of a tenant at sufferance to the^ former. The vendor may assert his legal title and recover possession of the premises by ejectment, and so disaffirm the executorj' agreement to sell; or if he elects to go into chancery, the proceeding is more correctly a bill for the specific '^execution of the contract by requiring the ven-dee to complete his purchase by paying the price, or otherwise have the subject sold at his risk, than a bill to subject the property to a mere equitable lien.
That a vendor retaining the legal title occupies a position different from and higher than one who has parted with the legal title and relies on the mere implied equitable lien, is not only clear from the considerations aforesaid, but is shown by the authorities. Notwithstanding the doubts of Lord Eldon, it may now be considered as well established that where the vendor who has conveyed, takes a personal collateral security, binding others as well as the vendee, as a bond or note with security, the lien on the land does not exist. But in the case of Hatcher’s adm’x v. Hatcher’s ex’ors, 1 Rand. 53, the purchaser gave bond with security for the purchase money, but received no conveyance ; and it was decided that the right of the vendor to resort to the land was not lost by having taken personal security. In that case, a suit at the instance of the security to subject the land for his indemnity, was sustained, before he had been compelled to pay himself. And upon the same principle it was held in Lewis v. Caperton’s ex’or, 8 Gratt. 148, that the vendor retaining the legal title may resort to the land as against creditors and incumbrances of the vendee, although the vendee had subsequently executed a deed by which he conveyed other property to secure the purchase money.
The distinction between the implied lien where the legal title is parted with, and the right of the vendor who has retained the title to enforce a specific execution, is clearly drawn in the cases of Brush v. Kinsly and Adams v. Stillwell, 14 Ohio R. 20. The judge says, “The lien of the vendor results from the fact that equity holds the vendee clothed with the legal title, a trustee of the vendor for the payment of the ^purchase money. Before the legal title passes from the vendor on a contract for the sale of land, there is no *830 such lien. The vendor’^ remedy in such case is on the contract either to enforce* a specific performance of the contract, or in an action at law. ■ The vendee cannot compel a relinquishment of the legal title until he clothes himself with equity by the pay,ment of the^purchase money.”
' In Clark v. Hall, 7 Paige’s E. 382, it was held, that where there is an unexecuted contract for sale, the vendor may file a bill to have specific execution, and then have the land sold for his debt. To the same effect were the cases in this court, of Hatcher v. Hatcher and Lewis v. Caperton, ubi supra, and Knisely v. Williams, 3 Gratt. 265; Hanna v. Wilson, 3 Gratt. 243; Hopkins v. Cockerell, 2 Gratt. 88; Beirne’s ex’ors v. Campbell, 4 Gratt. 125; Stuart’s ex’ors v. Abbott, 9 Gratt. 255.
In Hanna v. Wilson it was held, that although an action on the promissory note given for the purchase money might have been barred at law, yet as the vendor retaining the title could sue in ejectment at law, 'or file a bill for specific execution, and subject the land in default of payment, his right in equity was not affected by any lapse of time short of the period sufficient to raise the presumption of payment, whatever might be the operation of the statute of limitations in an action at law instituted upon the promissory note. A similar proposition was affirmed in Hopkins v. Cocke-rell. The cases of Lewis v. Caperton’s ex’ors, Stuart’s ex’ors v. Abbott and Beirne’s ex’ors v. Campbell, before-referred to, show that the intervention of a purchaser without notice, or a bona fide in-cumbrancer, does not obstruct the right of the vendor to charge the land. The case of Beirne and Campbell carried th.e principle so far as to hold that though a purchaser has obtained the legal title, and had no notice that there was purchase money due to a previous ^vendor, yet if his vendor had not the legal title when he purchased, the land is liable for the purchase money due to the previous vendor.
The cases of Hanna v. Wilson and Knisely v. Williams also determine that in such case the assignee for value of a note given for the purchase money of land, may maintain a suit against his assignor, the vendor and the vendee for a specific execution of the contract, in a case proper for such relief, and subject the land to the satisfaction of his claim, agreeing in this respect with the almost uniform current of decisions in this country where the vendor has not parted with the title; although there is more conflict of decision whether the vendor’s implied lien where he has parted with the legal title accompanies the assignment of the vendee’s note or bond for the purchase money. See note to Mackreth v. Symmons, 1 White & Tudor’s Lead. Cas. in Equity 245, where the cases are collected.
An application of these principles to the facts of the case under consideration, leaves no doubt in my mind of the right of the appellant to resort to the land in controversy for satisfaction. The contract of sale was executory; the appellant bound himself to make a deed to the appellee E. C. Mauclt when the first payment was made. Before the bonds for the purchase money fell due, an arrangement was made, by which the vendee, with his vendor the appellant as security, executed their bond to a creditor of the vendor for the amount of the purchase money, for which amount the creditor gave the appellant credit, and the bonds executed by the vendee were surrendered. The effect of the arrangement was the same as if the appellant had • assigned his vendee’s bonds for the purchase money in discharge of a debt, continuing responsible as assignor; or as if he had given to his creditor, in discharge of his own debt, an order on his*vendee for the amount of the purchase money, and which the vendee had accepted.
These arrangements did not change the character of the debt; it still consisted of the purchase money due for the land. Whether it should be paid to the vendor directly, or to a third person for his relief, and the discharge of his debt, did not change the nature of the consideration. The vendee becoming embarrassed, executed a deed of trust upon this, with other property, to secure some of his creditors; and failing to pay the substituted bond executed for the purchase money, his security the appellant was compelled to pay it. The arrangement, to the extent of the failure to pay, fell through. The purchase money was not paid; the vendor did not obtain relief from his debt. He was compelled to pay it; nominally as the security of the vendee, in reality because it was originally his own debt which his vendee had bound himself to pay out of the purchase money due to him. Whatever might be the position he occupied at law, in equity which regards substance and not form, he stood as the unpaid vendor retaining the legal title. If .the case stood alone between him and his vendee, could the latter compel him to relinquish the legal title until he had clothed himself with equity by the payment of the purchase money? Would he be heard to say that by shuffling the securities the purchase money was satisfied, though he had never paid and his vendor had never received a cent? Would he not be told, in the language of the president of this court in Watts v. Kinney, 3 Leigh 272, 295, ‘‘That a court of equity looks to substance, not to form, that it looks to the debt (here the purchase money) which is to be paid, not to the hand which may happen to hold it; that the fund (here the land) charged with its payment, shall be so applied, whosoever may be 'the person entitled; *and that it considers a debt as never discharged, until it is discharged by paj-ment to the proper person, and by the proper person.” So this court held in Knisely v. Williams, 3 Gratt. 265; a case somewhat similar in its circumstances to the present. There the vendor of land took a bond for the purchase money and retained the title to the land. He afterwards agreed *831 with the vendee to receive an order on a third person, payable at a distant day, for the amount of the bond. The order was given and the bond surrendered; but when the order was presented, the drawee refused to accept. It was held that the surrender of the bond and taking the order did not discharge the land, and that the vendor, upon the refusal to accept the order, could proceed forthwith, the purchase money being due at the date of the order, to enforce the specific execution of the contract, obtain a decree for the payment of the purchase money, and to subject the land to sale for the satisfaction thereof. Such would, as it seems to me, be the condition of these parties, if there had been no incumbrancers. As to them, the authorities show they must abide by the condition of their debtor. No fraud or misrepresentation is imputed to the vendor. They should have looked to the registry to ascertain whether their debtor had a legal title. The appellant has been guilty of no default; and their negligence can give them no equity against him.
I think the decree dismissing the bill is erroneous, and should be reversed with costs, and the cause remanded with instructions to enter a decree in conformity with the precedent in Knisely v. Williams, to execute the contract by requiring the appellant to execute a deed with general warranty to the appellee It. C. Mauck for the laud contracted to be sold to him by the appellant, and acknowledge the same in order to be recorded, and file the same with the papers of the cause; and upon the same being so executed, acknowledged *and filed, unless the said appellee, or some one for him, shall within thirty days pay the debt, interest and costs aforesaid, together with the costs of this suit, that then The commissioner of said court sell the land upon the usual credits.
The other judges concurred in the opinion of Allen, P.
The decree was as follows:
The court is of opinion, for reasons in writing filed with the record, that the decree of the Circuit court dismissing the bill of the appellant with costs, is erroneous. It is therefore adjudged and ordered, that the same be reversed and annulled, and that the appellees pay to the appellant his costs here expended.
And it is further decreed and ordered, that the cause be remanded to said Circuit court, with instructions to enter a decree in favor of the appellant against the appellee Robert C. Mauck for the balance of the purchase money unpaid, with interest thereon from the time the same became payable, and the costs of this suit; and furthermore to decree and order, that the appellant do make to said appellee R. C. Mauck a deed convejfing his interest in the land described in the contract, dated the 20th of April 1850, filed as an exhibit in the cause, with covenants of general warranty, and acknowledge the same in order to be recorded, and file the same with the papers in the cause; and if the debt, interest and costs aforesaid be paid within thirty days after the deed shall have been so filed, lhat said appellee, on such payment, have leave to withdraw said deed, leaving an attested copy thereof: And unless said debt, interest and costs shall be paid by the appellee K. C. Mauck, or some one for him, to the appellant within thirty days after the filing of said deed, ihat a commissioner, to be appointed by*said court, after giving bond according to law, shall, after duly advertising the time and place of sale, proceed to sell said land upon a credit of six, twelve and eighteen months, taking bond with security from the purchaser, and retaining a lien on the land for the security of the purchase money: And that he report his proceedings to court, in order to a final decree; which is ordered to be certified to said Circuit court of Rockingham county.
Decree reversed.